Gail Schroyer appeals the decision of the Elyria Municipal Court which entered judgment in favor of plaintiff Michael Williams and dismissed Gail's counterclaims. This court affirms.
 I.
In late June 1996, Gail Schroyer noticed that she had extremely high water bills. She called the water department for the City of Elyria to inspect the water line at her home at 606 Garfield Avenue in Elyria. The inspector visited the home and advised Gail that the water pipe was leaking in the crawl space. He noted that the pipe was galvanized rather than copper, and as such did not meet code requirements. The inspector advised Gail that he could not determine if the entire water line from the house to the street was galvanized or copper, but if any part of the pipe was galvanized that part would have to be replaced. Because of the severe leaking in the crawlspace, Gail's water was turned off at the street, and a hose connection was run to a neighbor's water line so Gail would have water service until her line could be repaired.
Gail looked in the phone book for a plumber and saw an advertisement for A.S.A.P. Plumbing. On June 20, 1996 Gail called Michael Williams, who is the sole proprietor of A.S.A.P. Plumbing, and described the situation. During the phone conversation, Williams gave Gail an estimate of $800 to $1,000 for replacing the pipe from the house to the street, based on Gail's estimate of the distance involved. Williams and Gail agreed that Williams would replace the water line on Saturday, June 22, 1996.
On Saturday, Gail had to attend a "work event," but her adult son Mike was present and he authorized the work. Gail returned home at 5:00 p.m. and she gave Williams a check for $1,004 for the work. However, Gail put a stop payment on the check, allegedly because Williams had damaged her sidewalk and vinyl flooring. Williams and Gail did not resolve the issue of the damage to Gail's property, and Gail refused to pay.
Williams initially sued Gail in small claims court, but dismissed the small claims case without prejudice and refiled in the municipal court. Gail counter-claimed for damages to her property, and alleged that Williams had violated Ohio's Home Solicitation Sales Act. After a trial before a magistrate, the magistrate recommended that judgment be entered for Williams for the original amount of the contract plus a returned check fee, for a total of $1,054. The magistrate also recommended that Gail's counterclaims be dismissed. Gail filed objections to the magistrate's decision but the trial court overruled the objections and entered judgment as recommended by the magistrate. Williams later filed a voluntary dismissal of his claim against Mike. Gail filed the instant appeal, assigning three errors.
 II. Assignment of Error A The Trial Court Erred in Finding that Plaintiff Was Entitled to Unjust Enrichment.
Gail's first assignment of error avers that the trial court's decision awarding damages to Williams amounted to "unjust enrichment" because Williams was not licensed as a plumber by the City of Elyria and because he did unnecessary work. Williams sued Gail for the contract amount, which included extra work for re-digging a trench. Gail counterclaimed against Williams for breach of contract based on Williams' performance of unnecessary work and unworkmanlike performance. Gail's first assigned error asserts that the trial court's determination on the contract issue was against the manifest weight of the evidence.
"When evaluating whether a judgment is against the manifest weight of the evidence in a civil context, the standard of review is the same as that in the criminal context." General Tire Inc. v. Mehlfeldt (Jun. 23, 1999), Summit App. No. 19269, unreported, at 5, citing Frederick v. Born
(Aug. 21, 1996), Lorain App. No. 95CA006286, unreported, at 14. In determining whether a judgment is against the manifest weight of the evidence:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the [judgment].
State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175; see, also State v. Otten (1986),33 Ohio App.3d 339, 340. Accordingly, before an appellate court will reverse a judgment, the court must determine that the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice.
We initially note that Gail raises the issue that Williams was not licensed as a plumber by the City of Elyria. Williams was licensed as a plumber in other communities and for this job he employed as a subcontractor Jay Houston, a plumber licensed in Elyria. The Elyria licensing official testified that as long as a licensed plumber was responsible for the work, he did not even have to be on the site. The evidence established that a plumber licensed by the City of Elyria performed the work in this case.
Gail further asserts that Williams did unnecessary work, because he replaced the entire water line when only a portion needed to be replaced. Gail's assertion is meritless. Gail testified that she authorized Williams to replace her water line at an estimated cost of $800 to $1,000. Gail was not at home when Williams showed up to do the work, but Gail's son Mike acted as her agent, authorized the work and signed the contract. Gail now has a working water line that meets city code standards. Gail has asserted that the entire water line did not need to be replaced, because the old pipe was copper, not galvanized, and as such did not need to be replaced. Gail states that the only leaking occurred in the crawl space, where there was clearly galvanized pipe, and that the entire needed repair job would cost no more than $100-$200.
Mike's testimony provides the sole support for Gail's unnecessary work allegation. Mike stated that he saw the old pipe when it was removed from the ground and that the old pipe was copper. However, both Williams and his sub-contractor Jay Houston testified that because of the location of the old pipe (next to the driveway and running under an inaccessible crawl space), they elected to run the new line in an entirely different location and leave the old line buried. Four days after the original work was done, the city inspector ordered Williams to re-dig the trench for the new line, so the inspector could determine whether the line was at a proper depth. In the process of re-digging the trench, the malleable copper line was damaged and a whole new length of copper was laid. At that time, the damaged new copper line was removed and replaced. Other than Mike's testimony, there was no evidence that the original pipe was copper rather than galvanized. Several witnesses testified that the original pipe was galvanized at the house end and that the connection to the city main at the street was also galvanized. The inspector for the city testified that he could not state whether the buried portion of Gail's original line was copper, galvanized, or both.
Williams originally quoted an estimate for digging and replacing the line at $800 to $1,000. He testified that because it costs between $400 and $700 to dig the trench, he would never replace only part of a line, which could later spring a leak. The manifest weight of the evidence was that the old line was galvanized at both ends, that the cost to remove the original line was virtually as much as replacing the entire length, and that it would be professionally unacceptable to replace parts of the old line, assuming only parts were galvanized, given the cost to the consumer.
Finally, Gail asserts that the work was not performed in a workmanlike manner, because Williams damaged Gail's sidewalk and vinyl flooring in the process. Gail claimed that a two-foot by four-foot section of her sidewalk was damaged by the legs of the backhoe during the trenching process. Jay Houston testified that the sidewalk was cracked already and had grass growing through it. Williams testified that he visited the site after Gail complained about the sidewalk damage, two days after the original work was completed, and he saw grass growing through the concrete. At trial Gail produced an estimate of $490 to replace the entire two-foot by thirty-foot length of sidewalk. When the magistrate asked if she had an estimate to replace only the damaged portion, Gail acknowledged that she could only guess it would cost $100. Gail also claimed that Williams badly burned her new vinyl flooring with solder when doing inside work. Gail offered no photographs of the damage. Gail said that the flooring was only two months old, but she could only give vague estimates about the cost of repair or replacement. Thus, Gail has failed to produce evidence upon which the magistrate could award damages, even if he believed that Williams caused the claimed damage to Gail's property.
This court cannot conclude that the trial court clearly lost its way when it awarded a judgment in favor of Williams for necessary work he performed pursuant to the contract. Nor can this court conclude that the trial court created a manifest miscarriage of justice when it failed to award Gail a monetary award on her claim of damage to her property.
Gail's first assignment of error is overruled.
 III. Assignment of Error B The Trial Court Erred in Finding that Plaintiff Did Not Commit any Unfair, Deceptive or Unconscionable Acts or Practices in Violation of the Consumer Sales Practices Act.
Gail asserts that Williams engaged in numerous violations of Ohio's Consumer Sales Practices Act. These violations include: (1) using an unregistered fictitious name; (2) not being a licensed plumber; (3) misrepresenting that Williams was licensed as a plumber; (4) not being registered as a trenching and excavating contractor; (5) not obtaining a permit; (6) failing to provide a disclosure form stating Gail was entitled to an estimate; (7) failing to disclose that Williams would charge $50 for a returned check; (8) misrepresenting that Williams' workers were covered by worker's compensation insurance; (9) failing to identify his workers; (10) using undisclosed independent contractors; (11) charging overreaching liquidated damages for the returned check; (12) failing to give Mike a copy of the contract at the time he signed it; (13) failing to perform at the agreed price; (14) misrepresenting that the entire line needed to be replaced; (15) not providing Gail with notice that she had the right to cancel within three days; (16) failing to give Mike a notice of cancellation form; and (17) starting and completing the work within the three day cancellation period.
Issues (2) and (3), that Williams was not licensed as a plumber, have already been overruled because the evidence established that Williams used a licensed plumber as a subcontractor who performed the work, and that this complied with Elyria's requirements for plumbing work. Issue (4) concerning the trenching license was never raised at the trial court, and is therefore not properly raised for the first time on appeal. See State v. Carter (2000), 89 Ohio St.3d 593, 598. Issue (5) is that Williams did not obtain a permit; however, the testimony established that a permit was issued for this job. Issue (8) concerns the fact that Williams advertised that his workers were covered by worker's compensation. At trial, Williams testified that he requires his subcontractors to provide worker's compensation for themselves and their employees. There was no testimony that any workers at the site were not covered by worker's compensation. Issues (9) and (10) deal with Williams' use of independent contractors. These issues were not raised at the trial court and thus cannot properly be considered by this court.Id. Issue (14), whether the entire line needed replacement, has already been addressed and overruled.
Issue (1) deals with Williams' use of a fictitious name without registering it with the Secretary of State. Williams testified that he believed he had registered the name A.S.A.P. with the Secretary of State, but in fact had failed to do so. Gail claims that this violates the Consumer Sales Practices Act, but she does not cite to the relevant portion of the CSPA statute, R.C. 1345. Assuming that Williams did violate the CSPA by failing to register the fictitious name, Gail failed to assert either at trial or on appeal how this caused her any damages.
Issue (13) is that Williams charged Gail more than the quoted price, namely $54.00 in sales tax and an additional $900 for re-digging the line for the city inspector, after Williams allegedly advised Gail that the trench should be left open for inspection. As to the sales tax, Gail claims that plumbing services are exempt from sales tax. However, Gail never raised that issue at trial, and we will dispense with it accordingly.
Williams charged an additional amount, pursuant to an agreement allegedly arrived at after the original work was completed. Specifically, because the work could not be inspected until Monday, Williams advised Gail that the trench should be left open for inspection. Gail testified that she told Williams to re-fill the trench, leaving open only the ends. Williams testified that he advised Gail there would be an extra charge for re-digging if the inspector required the line to be exposed. The trial court did not find in favor of Williams for the amount of the extra $900, but this court cannot say that the post-contract condition imposing extra costs for the re-digging the trench was a violation of the CSPA. Gail cites OAC Section109:4-3-05(D)(6) and (D)(11) that prohibit a charge for a service not authorized or a material misstatement of the estimated cost of a service. There was no evidence that the original estimate was for anything other than laying the new pipe, which Williams testified should have been left exposed until the inspection. Gail does not deny that she ordered Williams to refill the trench, except for the exposed ends. The following Monday, the inspector ordered the trench re-dug only to find that the pipe was at the proper depth. At the point Gail ordered the trench filled prior to the inspection, she materially changed the contract and assumed the risk of incurring other costs.
Issues (7) and (11) deal with Williams' charge of $50 for a returned check. Gail points out that Williams' bank only charged him a $5 returned check fee. Gail claims that the $50 charge to her was overreaching. However, Williams testified that when the check was returned, he had to make a call to Gail's home to try to collect the money, and he charged his usual $45 service charge. This testimony was uncontroverted, and the cost in collecting on the returned check was reasonable. Gail further states that Williams violated the CSPA by not disclosing his returned check policy. However, Gail did not present evidence that she was not advised of the returned check policy.
Issue (6) deals with the failure to give Mike a written notice of a right to receive a written estimate and issue (12) deals with the failure to give Mike a copy of contract when work began. Mike testified that he was not given a copy of the contract until the work was completed, and that there were material changes to the contract after he signed it. The material change included the notation that the customer had been advised to leave the trench open for inspection, or an additional charge could be added for the re-digging. Mike and Gail acknowledged that they received the contract with the notation about the additional charge when the work was completed. Assuming that failure to give Mike a copy of the contract violated the CSPA, the trial court did not award Williams the additional money for re-digging.
Issue (15), (16), and (17) deal with Williams' failure to notify Gail that she had three-days in which to cancel the contract.
R.C. 1345.21 et seq. comprises Ohio's Home Sales Solicitation Act ("HSSA"), which governs sales "of consumer goods or services in which the seller or a person acting for the seller engages in a personal solicitation of the sale at a residence of a buyer." R.C. 1345.21(A). The HSSA will not apply where the "transaction was conducted and consummated entirely by mail or by telephone if initiated by the buyer, and without any other contact between the seller or the seller's representative prior to the delivery of goods or performance of the service." R.C. 1345.21(A)(2). The evidence in the instant case supports the conclusion that the transaction was initiated by the buyer by telephone but that further negotiations occurred prior to the performance of the service. Thus, it appears that the instant transaction falls within the HSSA.
Gail claims that she was not provided with notice of the three-day right to rescind the transaction. A service provider may not complete the service within the three-day cancellation period, absent the consumer's written waiver under emergency circumstances. See R.C. 1345.22
and 1345.21(A)(5). R.C. 1345.23(B)(1) requires a contractor to advise a consumer of the right to cancel a contract by midnight of the third business day following signing of the contract. See R.C. 1345.22. Under the HSSA, when a contractor fails to comply with this provision, the consumer may elect to rescind the transaction at any time, up to three business days following actual notification of the right to rescind. R.C. 1345.23(C); see, also, Clemens v. Duwel (1995), 100 Ohio App.3d 423,431. The consumer must provide written notification that the consumer is exercising the right to rescind the contract. R.C. 1345.22.
In the instant case, it is clear that Williams did not provide Gail with notice of a three-day right to rescind, and that he completed the job on the day the contract was signed. However, Gail has not provided any evidence that she advised Williams in writing that she was exercising her right to rescind the contract. Rather, Gail merely stopped payment on the check. This is insufficient to protect her right to rescind under the HSSA. Thus, while Williams' failure to give Gail notice of her right to rescind violates the HSSA, the remedy for that failure is the rescission itself, which Gail has yet to exercise.
Pursuant to R.C. 1345.09(C), "[i]n any action for rescission, revocation of the consumer transaction must occur within a reasonable time after the consumer discovers or should have discovered the ground for it." Although she has known about the ground for exercising a rescission for over three years, Gail has yet to properly exercise her right of rescission, in accord with R.C. 1345.22.[1] Thus, while the trial court erred in concluding that Williams did not violate the HSSA, the trial court's decision constitutes harmless error because Gail has not complied with the dictates of the Act so as to protect her interests.
Gail's second assignment of error is overruled.
 IV. Assignment of Error C The Trial Court Erred in Excluding Gail's Evidence of Attorney Fees Incurred in Prior Action.
Gail asserts that the magistrate should have allowed her to submit evidence of her attorney fees in defending the small claims action that Williams commenced and then dismissed without prejudice.
However, because we have determined that Gail was not entitled to damages under the CSPA and that she was therefore not the "prevailing party" under an action for a CSPA violation, the trial court did not err in excluding evidence of the costs. See R.C. 1345.09(F)(2).
Gail's third assignment of error is overruled.
 V.
Having overruled Gail's assignments of error, we affirm the judgment of the trial court.
The Court finds that there were reasonable grounds for these appeals.
We order that a special mandate issue out of this Court, directing the Elyria Municipal Court, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
 __________________________ BAIRD, Presiding Judge.
WHITMORE, J., CARR, J. CONCUR
[1] Gail filed her counterclaim on March 20, 1997, nine months after the work was performed. Although she alleges violations of the HSSA, failure to give a three-day notice is not among the violations charged. Nor did the counterclaim assert that Gail wanted to rescind the transaction.